IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Marilix Villanueva Pérez; Luis Angel Román Peña; and The Conjugal Partnership constituted between them,<br><br>    Plaintiffs,<br><br>        v.<br><br>Caribbean Electrophysiology Services Inc., et al,<br><br>    Defendants. | Civil No. 24-1531 (GMM) |

## OPINION AND ORDER

Pending before the Court is non-party Hospital Damas, Inc.'s ("Hospital Damas") *Special Appearance by Hospital Damas, Inc., Requesting to Quash Subpoena for Production of Documents and Information According to F.R.C.P. 45* ("Motion to Quash") at Docket No. 78). After reviewing the filings, the Motion to Quash is **GRANTED IN PART AND DENIED IN PART.**

### I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

This is a medical malpractice case. On November 13, 2024, Plaintiffs, Marilix Villanueva Pérez ("Mrs. Villanueva") and Luis Angel Roman Peña, and the conjugal partnership constituted between them (collectively "Plaintiffs"), filed a *Complaint* against

Caribbean Electrophysiology Services Inc.[1], Dr. Helder Hernández-Rivera ("Dr. Hernández") and Dr. Jennifer Vargas-Santos ("Dr. Vargas") (collectively "Defendants"). (Docket No. 1). Therein, pursuant to diversity jurisdiction, Plaintiffs sued Defendants for medical malpractice under the Puerto Rico Civil Code. In sum, Mrs. Villanueva, Mrs. Maribel Pérez-Santiago's ("Mrs. Pérez") daughter, alleges that Dr. Hernández and Dr. Vargas are liable as their acts and/or omissions regarding the care of Mrs. Pérez were the proximate cause of her pulmonary embolus, deep vein thrombosis (DVT), and ultimate death. *See generally* (id.).

On January 27, the Defendants answered the *Complaint*. (Docket Nos. 13-15). On February 4, 2025, the Court ordered the parties to file a joint proposed case management order. (Docket No. 16). On February 14, 2025, Plaintiffs filed *Plaintiffs' Motion for Court Intervention Regarding Discovery Dispute* questioning, for the first time, the timing and sequence of expert disclosures and the timing and sequence of the depositions. (Docket No. 19). Due to the ongoing dispute regarding discovery plan and the parties' inability to file a joint proposed case management order, as previously required, on February 20, 2025, the Court issued its *Case Management Order*. (Docket No. 22).

---

[1] On February 21, 2025, Partial Judgment dismissing the *Complaint* without prejudice was entered as to this defendant.

After various discovery disputes regarding deposition schedules and expert reports, on October 21, 2025, the Court issued a *Memorandum and Order* which amended the *Case Management Order*. (Docket No. 88). Therein, the Court emphasized that expert reports, reply reports, and supplements to expert reports must be disclosed to the parties no later than October 28, 2025, which is two months before the discovery cutoff date set for December 28, 2025.

Prior to this order, non-party Hospital Damas filed its *Motion to Quash* on October 7, 2025. (Docket No. 78). Therein, Hospital Damas asserts that Plaintiffs served them with a subpoena on September 23, 2025, requesting the production of documents and information by October 15, 2025. (Id. at 1). The subpoena contains an Exhibit A, which includes twenty items of requested information and documents. (Id. at 5-6). Mainly, Hospital Damas claims that Plaintiffs are using the subpoena to obtain, in this case —in which it is not a party the same information Plaintiffs have failed to obtain from Hospital Damas in a parallel case filed in the Puerto Rico state court captioned Civil No. PO2024CV03266 ("Puerto Rico State Court"), in which they are a party. (Id. at 7). According to Hospital Damas, the subpoena causes undue burden because Plaintiffs are requesting through a subpoena the same information they requested in the Puerto Rico State Court via interrogatories, in a case with basically the same allegations of negligence as filed in this Court. (Id.). This, they posit, is being requested

to use the information against Hospital Damas in the pending state court litigation. (Id. at 1-4).

Hospital Damas contends that the subpoena shall be quashed because of undue burden because "Plaintiffs are coordinating the depositions [of] the expert and physician defendants, which are pertinent to the case at [the] local Court, with no participation from Hospital Damas, Inc['s] legal representation, under the shield that Hospital Damas, Inc is not a party in this captioned case." (Id. at 9). Moreover, Hospital Damas asserts that the information requested through Exhibit A of the subpoena, which entails patient's complete medical records, was provided to Plaintiffs in 2023. (Id. at 7).

In addition, Hospital Damas argues that items 11 and 14 of the Exhibit A of the subpoena request privileged or confidential information regarding employees which should be barred. (Id. at 8). Also, they contend that items 11 and 12 call for a periodical evaluation of defendant physicians, which is not discoverable under Puerto Rico Law, Regulation 9184 of July 1, 2020, Chapter XIV. (Id.) Furthermore, Hospital Damas asserts that Plaintiffs are requesting information that could be obtained by defendant physicians in this case. (Id. at 10). They also argue that Plaintiffs are requesting the information and documents in less than the time allowed by the Federal Rules of Civil Procedure. (Id.)

On October 22, 2025, Plaintiffs filed their *Plaintiffs'
Response in Opposition to Hospital Damas, Inc.'s Special
Appearance and Motion to Quash Subpoena for Production of Documents
and Information*. (Docket No. 90). Plaintiffs argue that, as alleged
in their *Complaint*, this medical malpractice and wrongful death
action arises from the care provided to Ms. Pérez at Hospital Damas
between June 14 and June 22, 2022. (Id. at 2). Accordingly,
Plaintiffs argue that since the medical care was provided within
the facilities of Hospital Damas, a subpoena was issued to said
institution to obtain information relevant to the medical
treatment provided, including: "1) the patient's medical record,
2) informed consent documentation, 3) institutional policies, 4)
protocols, and 5) credentialing materials related to co-
defendants" Dr. Hernández and Dr. Vargas. (Id. at 2-3). Plaintiffs
posit that requested information is "extremely relevant to assess
the circumstances of Ms. Pérez's care, the supervision and
coordination of the treating physicians, and the hospital's
standards and procedures applicable at the time of the events,"
because these are the standards and procedures that the defendant
physicians were required to follow during the medical care of Ms.
Pérez. (Id. at 3).

Moreover, Plaintiffs contend that Hospital Damas has not
established specific facts or evidence regarding burden, cost, or
privilege that can constitute undue burden. (Id. at 3-4).

Furthermore, Plaintiffs argue that the pendency of other cases does not limit Plaintiffs' right to obtain relevant information to this action. (Id. at 4). Plaintiffs also posit that Hospital Damas equally fails to establish that the information requested is confidential or privileged. (Id. at 5-6).

On November 11, 2025, Hospital Damas filed a *Special Appearance by Hospital Damas, Inc in Response to Plaintiffs Motion at Docket No. 92 Requesting Determination on Hospital Damas, Inc.'s Special Appearance and Motion to Quash Subpoena*. (Docket No. 94). Hospital Damas submits that information and documentation related to the institutional protocols and credentialing is only pertinent to the complaint in the case at Puerto Rico State Court, not to the federal case in the instant matter. (Id. at 2-4).

## II.  APPLICABLE LAW AND ANALYSIS

A.  Relevant Legal Standards for Discovery

District courts have "broad discretion in pretrial management matters," including discovery matters. Curet-Velásquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 54 (1st Cir. 2011); *see also* Neth. Ins. Co. v. HP, Inc., No. 18-CV-12136-DLC, 2022 WL 18027562, at *2 (D. Mass. Dec. 30, 2022); Faigin v. Kelly, 184 F.3d 67, 84 (1st Cir. 1999) ("A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes."). To that extent, "district courts must be afforded wide latitude in the management of

discovery." <u>Danny B. ex rel. Elliott v. Raimondo</u>, 784 F.3d 825, 834 (1st Cir. 2015).

Federal Rule of Civil Procedure 26 ("Rule 26") decrees that:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). What is "relevant" encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978). Federal Rule of Civil Procedure 26(b)(1) permits a party to obtain discovery that is "'relevant to any party's claim or defense.'" <u>Gardner v. Cape Cod Healthcare, Inc.</u>, 344 F.R.D. 127, 132 (D. Mass. 2023) (*quoting* Fed. R. Civ. P. 26(b)(1)).

"It is well settled that: [t]he party resisting production bears the burden of establishing lack of relevancy or undue burden. . . . [T]he 'mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection."

Aponte-Navedo v. Nalco Chem. Co., 268 F.R.D. 31, 36 (D.P.R. 2010)
(*quoting* Sánchez-Medina v. UNICCO Serv. Co., 265 F.R.D. 24, 27
(D.P.R. 2009)). Hence, courts must limit discovery if they
determine that "the discovery sought is unreasonably cumulative or
duplicative, or **can be obtained from some other source that is
more convenient, less burdensome, or less expensive.**" Fed. R. Civ.
P. 26(b)(2)(C)(i) (emphasis added); *see also* Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st
Cir. 2001); P.R. Aqueduct & Sewer Auth. v. Clow Corp., 108 F.R.D.
304, 312 (D.P.R. 1985).


B.    Fed. R. Civ. P. 45

     A party who seeks discovery from a nonparty must serve the
nonparty with a subpoena pursuant to Fed. R. Civ. P. 45 ("Rule
45"). *See* Vázquez-Fernández v. Cambridge Coll., Inc., 269 F.R.D.
150, 165 (D.P.R. 2010). "A Rule 45 subpoena is subject to the scope
of discoverable information set forth in [Rule 26(b)(1)]." P.R.
Ports Auth. v. P/V Norwegian Epic, No. 21-cv-1056 (RAM), 2022 WL
2704477, at *2 (D.P.R. July 12, 2022) (*citing* Smith v.
Turbocombustor Tech., Inc., 338 F.R.D. 174, 176 (D. Mass. 2021).

     Despite the broad scope of Rule 26, Rule 45(d)(3) sets forth
circumstances under which district courts must or may on timely
motion from a party or non-party quash or modify a subpoena. Strike
3 Holdings, LLC v. Doe, No. 25-cv-11552 (ADB), 2025 WL 2323608, at

*1 (D. Mass. Aug. 12, 2025). One of the grounds that requires
district courts to quash a subpoena if it "subjects a person to
undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). When analyzing
"motions to quash . . . , 'courts weigh the need of the party
seeking discovery against any undue hardships created by
permitting it.'" Green v. Cosby, 152 F. Supp. 3d 31, 36 (D. Mass.
2015) (quoting In re Methyl Tertiary, 269 F.R.D. 360, 363-64
(S.D.N.Y. 2010)). Factors germane to that analysis are "relevance,
the requesting party's need, the breadth of the request, and the
burden imposed." Id. (quoting Linsday v. C.R. Bard, Inc., No. 10-
mc-00441, 2011 WL 240104, at *1 (M.D. Pa. Jan. 24, 2011)). "The
party resisting discovery bears the burden of showing that the
subpoena imposes an undue burden, and it 'cannot rely on a mere
assertion that compliance would be burdensome and onerous without
showing the manner and extent of the burden and the injurious
consequences of insisting upon compliance.'" In re New England
Compounding Pharmacy, Inc. Prod. Liab. Litig., No. 13-mdl-02419,
2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013) (quoting Sterling
Merch., Inc. v. Nestle, S.A., No. 06-cv-01015, 2008 WL 1767092, at
*2 (D.P.R. Apr. 15, 2008)). Moreover, courts have recognized that
if "material sought by subpoena is readily available" to a party
in the action, then "obtaining it through subpoena on a nonparty
often will create an undue burden." Id. at *7 (quoting Gray v.
Town of Easton, No. 3:12-cv-00166, 2013 WL 2358599, at *3 (D. Conn.

May 29, 2013)). "'The mere availability of the documents from another source, however, does not preclude a subpoena directed to a nonparty if the party serving the subpoena can show that it is more expeditious to obtain the documents from a witness.'" Id.

Alternatively, "the court may, instead of quashing or modifying a subpoena . . . [order] production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship . . . ." Fed. R. Civ. P. 45(d)(3)(C)(i).

Lastly, Fed. R. Civ. P. 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . ." Fed. R. Civ. P. 26(c)(1). A movant has the burden of demonstrating that good cause exists for the issuance of the protective order. See Public Citizen v. Liggett Grp., Inc., 858 F.2d 775, 789 (1st Cir. 1988). To meet this burden, the movant must provide the Court with "a particular and specific demonstration of fact" and not merely "stereotyped and conclusory statements." Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P., 876 F.3d 690, 698 (5th Cir. 2017) (quoting In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998)); see also González Berrios v. Mennonite

Civil No. 24-cv-1531 (GMM)
Page - 11 -

Gen. Hosp., Inc., No. 18-cv-1146 (RAM), 2019 WL 4785701 at *2

(D.P.R. Sept. 30, 2019).


### III. ANALYSIS

The subpoena in controversy includes twenty items which

will be reviewed by the Court in turn. *See* (Docket No 78-1).


A.    Request for Medical Records

      Request for Production No. 1

      Provide a complete copy of the medical record of patient
      Maribel Pérez Santiago at Hospital Damas, Inc.,
      including but not limited to admission records,
      physicians' notes, nursing notes, orders, operative
      reports, anesthesia records, laboratory and diagnostic
      test results, imaging studies, medication administration
      records, progress notes, discharge summary, and any
      other documentation generated in connection with the
      care and treatment provided to her at said institution.



      Request for Production No. 16

      Produce any and all documents reflecting informed
      consent obtained from patient Maribel Pérez Santiago in
      connection with the catheter ablation procedure
      performed at Hospital Damas, Inc., on June 15, 2022,
      including signed consent forms, explanatory materials
      provided, and records of any alternatives to treatment
      discussed with the patient.

      As to these requests, Hospital Damas argues that Ms. Pérez's

complete, certified, and numbered medical records were provided to

Plaintiffs since 2023. (Docket No. 78 at 7). Notwithstanding, as per their allegations, these medical records were apparently provided as part of litigation before the Puerto Rico State Court. Here, Plaintiffs have established that the medical records held by Hospital Damas are relevant, as the medical malpractice claims before this Court implicate the medical care that was provided to Ms. Pérez by the defendant physicians Dr. Hernández and Dr. Vargas at Hospital Damas. *See* In re Intuniv Antitrust Litig., No. 16-CV-12396-ADB, 2018 WL 6590616, at *3 (D. Mass. Dec. 14, 2018) (ruling that "medical records are relevant and must be produced" where they would define and clarify the parties' claims and defenses). Any information or forms regarding Ms. Pérez informed consent that is not included in the medical records are also considered relevant. Despite this finding, Hospital Damas shall produce the certified medical records as requested in the subpoena, at Plaintiffs' cost.

B.  The Other Information Sought by Plaintiffs is Reasonably in Defendants' Possession

As discussed previously, Rule 26(b)(2) requires this Court to limit discovery when it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2). Furthermore, if obtaining the information requested puts a significant burden on the nonparty, then courts

have the power to modify or quash the subpoena. *See* Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). "[T]his process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other sources" which is "obviously ... a highly case specific inquiry and entails an exercise of judicial discretion." In re Wood, No. 2:19-MC-00146-JHR, 2019 WL 5789848, at *1 (D. Me. Nov. 6, 2019) (*quoting* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure ("Wright & Miller") § 2463.1, at 501-506 (3d ed. 2008)).

Notably, much of the information Plaintiffs are seeking can reasonably be obtained from Defendants. To wit, the following requests for productions fall under this category:

Request for Production No. 3

Provide a copy of any employment and/or professional services contract entered into between Hospital Damas, Inc., and Dr. Jennifer Vargas Santos, as well as between Hospital Damas, Inc., and Dr. Helder Hernández Rivera, that was in effect on the date of the events giving rise to this action.

Request for Production No. 4

Provide a copy of the hospital privileges file of Dr. Jennifer Vargas Santos, including all applications for privileges, credentialing documentation, certifications, renewals, evaluations, credentialing committee approvals, and any other documents related to the privileges granted by Hospital Damas, Inc., to said physicians for the provision of health services

Civil No. 24-cv-1531 (GMM)
Page – 14 –

Request for Production No. 5

Provide a copy of the hospital privileges file of Dr.
Helder Hernández Rivera, including all applications for
privileges, credentialing documentation,
certifications, renewals, evaluations, credentialing
committee approvals, and any other documents related to
the privileges granted by Hospital Damas, Inc., to said
physicians for the provision of health services.


To date, Plaintiffs have not shown that they have tried to
discover the information in question directly from Defendants and
through less burdensome methods. It appears that Plaintiffs are
trying to circumvent Dr. Hernández and Dr. Vargas by going directly
to nonparty Hospital Damas. "Although discovery is by definition
invasive, parties to a lawsuit must accept its travails as a
natural concomitant of modern civil litigation. Non-parties have
a different set of expectations." Cusumano v. Microsoft Corp., 162
F.3d 708, 717 (1st. Cir. 1998). "Accordingly, concern for the
unwanted burden thrust upon nonparties is a factor entitled to
special weight in evaluating the balance of competing needs" for
discovery. Id.; see Cascade Yarns, Inc. v. Knitting Fever, Inc.,
755 F.3d 55, 59 (1st Cir. 2014).

With this in mind, pursuant to Federal Rule of Civil Procedure
26(b)(2)(C)(i), the Court can and will require Plaintiffs to first
seek any information regarding the privileges held by Dr. Hernández
and Dr. Vargas at Hospital Damas or any information regarding their
employment relationship with Hospital Damas from the doctors

directly, without prejudice of any objection that they may have. *See* Casillas v. Bayer Puerto Rico, Inc., No. CV 22-1167 (GMM), 2024 WL 637425, at *6 (D.P.R. Feb. 15, 2024) (citing Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 978 (Fed. Cir. 1993)); Satanic Temple, Inc. v. City of Boston, MA, No. 21-CV-10102-AK, 2022 WL 1028925, at *4 (D. Mass. Apr. 6, 2022); *see also* Moon v. SCP Pool Corp., 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing a subpoena that sought information from a nonparty that pertained to a party since the movant could more easily and inexpensively obtain the documents from the party itself).

Therefore, at this juncture, the requests listed above, are quashed.

C.    Relevancy of Certain Requests

Request for Production No. 2

Provide the full names, current addresses (physical and mailing, both residential and work), telephone numbers, and if applicable, for medical or nursing personnel the professional license number of all individuals who, to your best knowledge and belief, participated in any way in the treatment of patient Maribel Pérez Santiago from June 14, 2022 through June 22, 2022, particularly in connection with the catheter ablation procedure and the events that followed.

Request for Production No. 6

Produce all documents, manuals, bylaws, policies, protocols, committee minutes, credentialing files, or other records in effect at Hospital Damas, Inc., at the time Dr. Jennifer Vargas Santos was recruited or began

providing services that reflect the procedures, criteria, and requirements for granting medical staff privileges and/or entering into professional services of employment contracts with physicians.

Request for Production No. 7

Produce all documents, manuals, bylaws, policies, protocols, committee minutes, credentialing files, or other records in effect at Hospital Damas, Inc., at the time Dr. Helder Hernández Rivera was recruited or began providing services that reflect the procedures, criteria, and requirements for granting medical staff privileges and/or entering into professional services of employment contracts with physicians.

Request for Production No. 8

Provide a copy of all regulations applicable to the medical staff, institutional manuals, and criteria in effect at Hospital Damas, Inc., at the time when Dr. Jennifer Vargas Santos was recruited or began providing services at said institution.

Request for Production No. 9

Provide a copy of all regulations applicable to the medical staff, institutional manuals, and criteria in effect at Hospital Damas, Inc., at the time when Dr. Helder Hernández Rivera was recruited or began providing services at said institution.

Request for Production No. 10

Provide a copy of all protocols, regulations, institutional manuals, and by-laws that were in effect at Hospital Damas, Inc., at the time of the events alleged in the complaint, relating to: a. the management of patients undergoing cardiac ablation procedures or interventions similar to those described in the complaint; b. the administration of anticoagulant medications or prophylaxis to prevent deep vein thrombosis (DVT); c. postoperative procedures, recovery, and evaluation for medical discharge; d. the assignment, supervision and coordination of physicians, nursing

staff, and/or other health professionals to surgical patients; e. the responsibilities of medical staff with privileges in the institution, including contractors or employees; f. any other institutional regulation or policy related to patient care in operating rooms, anesthesia, nursing, or intensive care units.

Request for Production No. 15

Produce all documents, consent forms, patient information sheets, manuals, protocols, or other materials in effect at Hospital Damas, Inc., during the period of June 2022, that identify or describe the possible risks or complications associated with performing a catheter ablation procedure (or similar cardiac ablation procedures) on patients.

Request for Production No. 17

Produce all documents, consent forms, manuals, protocols, or other materials in effect at Hospital Damas, Inc., during June 2022 that describe the possible risks or complications associated with performing a catheter ablation procedure (or similar cardiac ablation procedures) on patients generally and on patient Maribel Pérez Santiago in particular, including any materials reflecting whether such risks were disclosed to her and whether treatment alternatives were provided.

Request for Production No. 18

Produce copies of all insurance policies, including any primary, excess, or umbrella coverage, that provided liability coverage to Hospital Damas, Inc., for claims arising from medical malpractice or professional negligence, together with all declarations, riders, or endorsements in effect during the period June 14-22, 2022.

Request for Production No. 19

Produce all incident reports, internal investigation reports, committee reports, or other documents created by Hospital Damas, Inc., or its insurers in connection with the care and treatment of patient Maribel Pérez Santiago from June 14-22, 2022.

Civil No. 24-cv-1531 (GMM)
Page – 18 –

<u>Request for Production No. 20</u>

Produce all bylaws, protocols, regulations, and manuals
in effect at Hospital Damas, Inc., during June 2022
relating to:
a. the process for documenting and responding to
intraoperative or postoperative complications;
b. informed consent policies and procedures;
c. ICU admission and monitoring of post-ablation
patients;
d. nursing staff supervision and chain of command; and
e. reporting obligations for adverse events or sentinel
events.

Because subject matter jurisdiction in this action is based
on diversity of citizenship, the substantive law of Puerto Rico is
applicable. <u>Boston Gas Co. v. Century Indem. Co.</u>, 529 F.3d 8, 21
(1st Cir. 2008). In a medical malpractice suit, a plaintiff may
sue a doctor, a hospital, or both, as long as he/she can establish
negligence on the part of each particular defendant. This is so
because a hospital may be found vicariously liable for the
negligence of its employees. <u>Cruz v. Hosp. Episcopal San Lucas,
Inc.</u>, No. CV 16-2959 (MDM), 2022 WL 2704484, at *5 (D.P.R. July
12, 2022) (*citing* <u>Márquez Vega v. Martínez Rosado</u>, 116 D.P.R. 397,
405, 16 P.R. Offic. Trans. 487, 495 (1985)). <u>Lama v. Borras</u>, 16
F.3d 473, 480-81(1st Cir. 1994) (discussing negligence and the
prima facie elements of a medical malpractice suit against a
hospital).

It is settled law that a plaintiff in a negligence claim
against physicians for medical malpractice under Puerto Rico law
"must establish: (1) the duty owed (i.e., the minimum standard of

professional knowledge and skill required in the relevant
circumstances), (2) act or omission transgressing that duty, and
(3) a sufficient causal nexus between breach and the claimed harm."
Sandoval v. Hosp. Oriente, Inc., 770 F. Supp. 3d 412, 427 (D.P.R.
2025) (citations and emphasis omitted). Under Puerto Rico law, a
"physician's duty is 'to offer his or her patient that medical
care, attention, skill and protection that, in the light of the
modern means of communication and education, and pursuant to the
current status of scientific knowledge and medical practice, meets
the professional requirements generally acknowledged by the
medical profession.'" Pagés-Ramírez v. Ramírez-González, 605 F.3d
109, 113 (1st Cir. 2010) (quoting Santiago Otero v. Méndez, 135
P.R. Dec. 540, 548 (Mar. 25, 1994)). Accordingly, "Puerto Rico
holds health care professionals to a national standard of care."
Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184,
190 (1st Cir. 1997) (citations omitted).

The scope of the subpoena itself and of the listed requests
are problematic. In each of the requests, Plaintiffs seeks
production of "all documents" regarding either manuals, bylaws,
policies, protocols, committee minutes, credentialing files, or
other records in effect at Hospital Damas at the time when the
Defendants were recruited or began providing services at Damas
Hospital or during the period of June 2022. As to these requests,
Plaintiffs try to establish that they are relevant to their claims

because Ms. Pérez was treated at Hospital Damas. However, the Court finds that although at first glance the requests may appear to be relevant to the malpractice suit, they are in fact irrelevant to the cause of action before this Court, because the medical malpractice claims filed before this Court are against Dr. Hernández and Dr. Vargas and not against the hospital. Thus, in this case the information that is relevant to Plaintiffs' claims is documentation regarding Dr. Hernández and Dr. Vargas's compliance with the minimum standard of professional knowledge and skill. However, since Hospital Damas is not a defendant in this case, information regarding the medical or nursing personnel and all individuals from Hospital Damas who participated in any way in the treatment of Ms. Pérez is overly broad and irrelevant. That is, they do not bear on any issue that is in this case.

Moreover, these requests are excessively burdensome and overbroad as Plaintiffs are requesting all documentation from the Hospital since the Defendants were recruited, and not only during the time that encompasses their claims. Equally burdensome and irrelevant to this case are the requests for protocols, policies, regulations, and manuals in effect at Hospital Damas. Again, this is not an ordinary medical malpractice case, where a treating hospital is sued together with treating physicians and administrative information would be relevant to establishing the hospital's vicarious or supervisory liability. Here, the treating

hospital is not a party. In addition, the requests also include information regarding credentialing, which is usually a separate negligence cause of action brought against hospitals, which is not the case here. Thus, in balancing the competing needs for the information sought and the burden it causes, the fact that Ms. Pérez was treated at Hospital Damas does not give way to a fishing expedition to find information regarding Defendants from a non-party, who happens to be the treating hospital that they deliberately chose to leave of out of their medical malpractice claims.

Next, the Court addresses Hospital Damas's claim that these requests are an end-run around for retrieving similar information and documents for use against Hospital Damas, who is a defendant in the parallel litigation before the Puerto Rico State Court. "In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." Oppenheimer Fund, 437 U.S. 340, 353 n.17. (1978). A party is not permitted to exploit the liberal federal discovery rules to obtain information for purposes unrelated to the case at hand, including for use in other lawsuits. 6 James Wm. Moore et al., Moore's Federal Practice § 26.101[1][b] (3d ed. 2017). To the extent this is the case at bar,

Plaintiffs cannot use a subpoena here to obtain information for use in their separate actions against Hospital Damas. *See* Hukman v. S.W. Airlines Co., No. 18-cv-1204 (RBB), 2019 WL 2289390, at *3 (S.D. Cal. May 28, 2019); Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03-cv-1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (*citing* Nicholas v. Poughkeepsie Sav. Bank/FSB, No. 90-cv-1607 (RWS), 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991)).

The overbreadth of the subpoena requests alone provides an independent basis to quash them. In addition, the subpoena requests should be quashed because the information sought by Plaintiffs lack of relevance to this malpractice case to warrant production. On top of this, since Hospital Damas is not a party to this suit, the Court cannot turn a blind eye on the nature of the requests and the mere possibility of gathering information for use in proceedings other than the pending suit.

Thus, for all these reasons the requests listed above are quashed, since concern for the unwanted burden thrust upon a non-party is a factor entitled to special weight in evaluating the balance of competing needs for discovery.

D.   Privileged or Confidential Information

Request for Production No. 11

Produce all organizational charts, staffing manuals, policies, job descriptions, or other documents in effect at Hospital Damas, Inc., that identify the entity, unit,

Civil No. 24-cv-1531 (GMM)
Page – 23 –

or individual(s) responsible for supervising the nursing
staff assigned to the area where patient Maribel Pérez
Santiago was treated during the period of June 14- 22,
2022.

Request for Production No. 12

Produce all documents, records, evaluations, performance
reviews, credentialing files, committee reports, or
other materials reflecting any periodic professional
evaluations of Dr. Helder Hernández Rivera during his
relationship with Hospital Damas, Inc., including
whether such evaluations were deemed satisfactory.

Request for Production No. 13

Produce all documents, records, evaluations, performance
reviews, credentialing files, committee reports, or
other materials reflecting any periodic professional
evaluations of Dr. Jennifer Vargas Santos during his
relationship with Hospital Damas, Inc., including
whether such evaluations were deemed satisfactory.

Request for Production No. 14
Produce all documents, records, performance reviews,
evaluations, committee reports, or other materials
reflecting any periodic professional evaluations of the
nursing staff who participated in the care of patient
Maribel Pérez Santiago at Hospital Damas, Inc., during
the period of June 14-22, 2022, including whether such
evaluations were deemed satisfactory.

(Docket No 78 at 5-7).

A review of the requests enumerated 11-14 reflects that these

entail production of information or documents regarding the

professional evaluations of physicians and hospital staff. As to

these requests, Hospital Damas objects to their production because

the information regarding periodical evaluations is confidential

and privileged as provided by Puerto Rico law and particularly by

Civil No. 24-cv-1531 (GMM)
Page – 24 –

Regulation 9184. Regulation 9184 is a regulation promulgated by
the Secretary of the Puerto Rico Department of Health as authorized
by Puerto Rico Act No. 101 of June 26, 1965. Chapter 14 of
Regulation 9184[2] defines quality in healthcare as a model of
continuous improvement that satisfies patient needs and
expectations while adhering to established standards. Article
14.06 specifically addresses the confidentiality, privacy, and
security of information gathered during evaluative processes.
Subsection A explicitly designates as confidential all information
collected in quality reviews, peer evaluations, risk management,
and infection control. Subsection C further prohibits the
disclosure of such documents for purposes other than self-
evaluation and quality management, emphasizing that public policy
seeks to promote transparency within institutions to improve
healthcare outcomes. According to the regulations, the
confidentiality of peer reviews, quality assurance evaluations,
and similar deliberative processes is critical to fostering honest
and productive discussions within medical institutions, which
directly benefit patient care and safety.

These provisions serve as the legal foundation for Hospital
Damas's privilege assertions. The privileges invoked by Hospital
Damas, who is a non-party, is not merely discretionary but are

---

[2] *Reglamento del Secretario de Salud para la Construcción, Operación,
Mantenimiento y Licenciamiento de los Hospitales en Puerto Rico.*

Civil No. 24-cv-1531 (GMM)
Page – 25 –

mandated by Puerto Rico law to protect sensitive internal processes essential to improving institutional quality. Notably, the few federal courts that have recognized medical peer review privilege have done so in the context of medical malpractice claims. *See, e.g.*, Francis v. United States, 2011 WL 2224509, at *5 (S.D.N.Y. May 31, 2011) (recognizing "a privilege protecting peer review records from disclosure in medical or dental malpractice actions would promote the interests of health care practitioners, health care facilities and the public").

Notwithstanding the apparent applicability of the peer review privilege here, the Court finds there is no need to make a ruling on that matter, as with other information sought by Plaintiffs, the information regarding staff evaluations, again, pertains to any potential supervisory liability by the hospital, who is not a party to the medical malpractice claim before this Court. *See supra* Part III.B. Therefore, the above listed requests are also quashed.


## IV. CONCLUSION

For the foregoing reasons, the Motion to Quash is **GRANTED IN PART AND DENIED IN PART.** Hospital Damas shall provide Plaintiffs a certified copy of the medical records held by the hospital as instructed herein, at Plaintiffs' cost. All other requests included in the subpoena are quashed. Plaintiffs are instructed avoid any delays in the taking of depositions that can impact this

Civil No. 24-cv-1531 (GMM)
Page – 26 –

Court's *Case Management Order*, which still mandates conclusion of

all discovery, fact and expert, by December 28, 2025.

    IT IS SO ORDERED

    In San Juan, Puerto Rico, November 26, 2025.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE