**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| MARILIX VILLANUEVA PÉREZ; LUIS ANGEL ROMÁN PEÑA,<br><br>       Plaintiffs,<br><br>       v.<br><br>CARIBBEAN ELECTROPHYSIOLOGY SERVICES INC. et al.,<br>       Defendants. | **Civil No. 24-1531 (GMM)** |

<u>**OPINION AND ORDER**</u>

Pending before the Court is Defendant Dr. Jennifer Vargas Santos' ("Dr. Vargas") *Memorandum of Law in Support of Motion for Entry of Partial Summary Judgement* ("*Motion for Partial Summary Judgment*"). (Docket No. 101). For the foregoing reasons, the *Motion for Partial Summary Judgment* is **DENIED.**

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is a medical malpractice case. On November 13, 2024, Plaintiffs Marilix Villanueva Pérez ("Mrs. Villanueva") and Luis Ángel Román-Peña, and the conjugal partnership constituted between them (collectively, "Plaintiffs"), filed a *Complaint* against Caribbean Electrophysiology Services Inc.,[1] Dr. Helder Hernández-Rivera ("Dr. Hernández"), Dr. Vargas, and their conjugal partners.

---

[1] On February 21, 2025, *Partial Judgment* dismissing the *Complaint* without prejudice was entered as to this defendant. (Docket No. 25).

Civil No. 24-1531 (GMM)
Page -2-

(Docket No. 1). Pursuant to diversity jurisdiction, Plaintiffs sue Defendants for medical malpractice under the Puerto Rico Civil Code. Mrs. Villanueva, Mrs. Maribel Pérez-Santiago's ("Mrs. Pérez") daughter, alleges that Dr. Hernández and Dr. Vargas are liable as their acts and omissions in this case regarding the care of Mrs. Pérez were the proximate cause of her pulmonary embolus, deep vein thrombosis ("DVT"), and ultimate death. *See generally* (id.).

On January 27, the Defendants answered the *Complaint*. (Docket Nos. 13-15). On February 20, 2025, the Court issued its *Case Management Order*. (Docket No. 22). After various discovery disputes, on February 11, 2026, Dr. Vargas filed a *Motion for Partial Summary Judgment*. (Docket No. 101). Therein, Dr. Vargas requests the entry of partial summary judgment determining that the claims asserted against her are subject to the statutory limitations of liability pursuant to Act No. 136-2006, the Regional Academic Medical Centers of Puerto Rico Act ("RAMC Act"). (Id. at 8-12). Dr. Vargas claims that she was acting within the scope of her "teaching duties" at Hospital Damas Ponce, which she argues falls into the exception from liability provided by the RAMC Act. (Id.).

On March 20, 2026, Plaintiffs filed their *Opposition to Dr. Vargas' Motion for Partial Summary Judgment*, arguing that the Court

Civil No. 24-1531 (GMM)
Page -3-

should deny Dr. Vargas' request, as genuine issues of material fact exist both as to the applicability of the RAMC Act and as to negligence and causation. (Docket No. 110). On March 30, 2026, Dr. Vargas filed a *Memorandum of Law in Support of Reply to "Opposition to Dr. Vargas' Motion for Partial Summary Judgment."* (Docket No. 114). On May 4, 2026, Plaintiffs filed their *Sur-Reply to Opposition to Dr. Vargas' Motion for Partial Summary Judgment.* (Docket No. 120).

The Court has meticulously evaluated all of the parties' filings. The matter is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 56

Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992).

"A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party" and, by the same token, "[a] fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (*quoting* Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d

Civil No. 24-1531 (GMM)
Page -4-

28, 30 (1st Cir. 2008)). The movant bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115. Questions of credibility and fact-finding are reserved for a jury. Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The Court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Delineating between questions of fact and questions of law has long been of a "vexing nature" to courts. Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982). However, if a court deems a question is of mixed fact and law, that question is also reserved for the jury at this stage. Id.

B.   Loc. Civ. R. 56

Motions for summary judgment are also governed by Local Civil Rule 56. Loc. Civ. R. 56; see also López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023). At its discretion, the Court can accept a movant's facts where they are not properly controverted. Id. Local Rule 56(c) states, in pertinent part, that

Civil No. 24-1531 (GMM)
Page -5-

"[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Loc. Civ. R. 56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(e). Id. Local Rule 56(e), for its part, provides that these facts, "if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . . The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." Id. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." López-Hernández, 64 F.4th at 26. Litigants ignore the anti-ferret rule at their peril. Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trialworthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).

Civil No. 24-1531 (GMM)
Page -6-

### III. UNCONSTESTED FACTS

The Court examined *Defendant Dr. Jennifer Vargas Santos Statement of Uncontested Material Facts In Support of Motion for Partial Summary Judgement* (Docket No. 101-1) and the *Statement Of Material Facts In Support Of Opposition To Dr. Vargas' Motion For Partial Summary Judgment* (Docket No. 110-1), as well as the *Reply to Plaintiffs Statement of Uncontested Material Facts Included In "Opposition to Dr. Vargas' Motion for Partial Summary Judgment,"* which submits additional proposed uncontested facts. (Docket No. 114-1).

The Court notes that Plaintiffs did not comply with Local Rule 56(c). In opposition, they submitted their own statement of facts and failed to admit, deny, or qualify the facts supporting partial summary judgment submitted by Dr. Vargas. If a party does not comply with the rule, the "district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, the Court draws the following factual findings from the parties' admissions on the record and those statements of proposed facts submitted by the parties that comply with Local Rule 56. *See* CMI Cap. Mkt. Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every proposed fact properly submitted by the parties, it will

Civil No. 24-1531 (GMM)
Page -7-

only consider and include below those that are material and uncontested for purposes of the *Motion for Partial Summary Judgment*.

After thorough review, the Court finds that the following material facts are not in genuine dispute:

1. Dr. Vargas is a medical doctor specializing in internal medicine who works at Hospital Damas Ponce. (Docket Nos. 101-1 ¶ 10; 101-6).

2. Dr. Vargas first intervened with Ms. Pérez on June 15, 2022, which is the date of her admission, following a catheter ablation procedure. (Docket Nos. 110-1 ¶ 1; 110-2 at 17-22; 114-1 at 1).

3. Dr. Vargas documented the history and physical examination at approximately 6:40 p.m. on June 15, 2022. (Docket Nos. 110-1 ¶ 2; 110-2 at 18; 114-1 at 1).

4. Ms. Pérez was referred to Dr. Vargas after the procedure by Dr. Hernández or his assistant for admission and monitoring, and Dr. Vargas accepted the patient under her service. (Docket Nos. 110-1 ¶ 3; 110-2 at 19; 114-1 at 1).

5. The referral and acceptance of the patient occurred after the procedure had already been completed. (Docket Nos. 110-1 ¶ 4; 110-2 at 20; 114-1 at 1).

6. Dr. Vargas described patients such as Ms. Pérez as "private patients," including those referred to her by another physician for admission and management. (Docket Nos. 110-1 ¶ 6; 110-2 at 30-31; 114-1 at 1).

Civil No. 24-1531 (GMM)
Page -8-

7.  At the time of her initial evaluation of Ms. Pérez on June 15, 2022, Dr. Vargas did not document whether she was accompanied by a resident. (Docket Nos. 110-1 ¶ 7; 110-2 at 18; 114-1 at 1).

8.  There is no written note on the medical record from any resident regarding Ms. Pérez on June 15, 2022. (Docket Nos. 110-1 ¶ 8; 110-2 at 18; 114-1 at 1).

9.  As part of her clinical evaluation, Dr. Vargas performs a risk assessment for venous thromboembolism. (Docket Nos. 110-1 ¶ 10; 110-2 at 23; 114-1 at 2).

10. At the time of the events included in the *Complaint*, Hospital Damas had an *Affiliation Agreement* with the Ponce School of Medicine and Health Sciences which dates from April 17, 2012 and was renewed on 2019. (Docket Nos. 101-1 ¶ 9; 101-3; 101-4).

11. According to the *Affiliation Agreement* Hospital Damas and the Ponce School of Medicine and Health Sciences agreed to form an Educational Consortium to assist and support each other in providing educational experiences and teaching sites for medical students and physicians in training, who are also known as medical residents. (Docket No. 101-4 at 1).

12. The *Affiliation Agreement* was implemented as authorized by the RAMC Act which created RAMCs and allowed for the Southwestern Regional Medical Center ("Southwestern RAMC"), which was created by the Ponce School of Medicine and Health Sciences. (Docket No. 101-4 at 1-2).

13. The Southwestern RAMC is designed to support the existing educational programs, to assist in the creation of additional educational programs, to identify additional sources of

Civil No. 24-1531 (GMM)
Page -9-

revenue for the educational effort, to ensure the availability of an adequate and diverse patient population available for educational purposes, to assist in carrying our the mission of the Hospital Damas and the Ponce School of Medicine and Health Sciences, which is to foster undergraduate and graduate medical education, and to provide benefits in malpractice insurance coverage. (Docket No. 101-4 at 2).

14. On July 7, 2016, Dr. Vargas was promoted from the academic rank of instructor to Assistant Professor in the Department of Internal Medicine at Ponce School of Medicine and Health Sciences. (Docket Nos. 101-1 ¶ 11; 101-7).

15. Dr. Vargas currently holds the position of Chair of the Department of Internal Medicine of the Ponce School of Medicine and Health Sciences. (Docket Nos. 101-1 ¶ 13; 101-9 ¶ 9).

16. Dr. Vargas has been a faculty member at the Ponce School of Medicine and Health Sciences since 2006. (Docket Nos. 101-1 ¶ 13; 101-9 ¶ 9).

17. As member of the faculty of the Ponce School of Medicine and Health Sciences, Dr. Vargas is also a member of the Southwestern RAMC. (Docket Nos. 101-1 ¶ 14; 101-9 ¶ 11).

18. As part of her duties as Assistant Professor at Hospital Damas, Dr. Vargas participates in the education of medical students and residents. (Docket Nos. 101-1 ¶ 15; 101-10).

19. As Assistant Professor at Hospital Damas Ponce Dr. Vargas was assigned transitional residents and residents of Internal Medicine to provide teaching during their rotations in Internal Medicine. (Docket Nos. 101-1 ¶ 15; 101-6 ¶ 6).

Civil No. 24-1531 (GMM)
Page -10-

20.  Dr. Vargas did not have any residents present
     when Ms. Pérez was admitted. However, she
     later discussed the case with the residents in
     the rotation. (Docket Nos. 101-1 ¶ 17; 110-2
     at 18-19; 114-1 at 3).

## IV.  APPLICABLE LAW AND ANALYSIS

The parties seek a ruling on the applicability of the RAMC Act's liability caps to Plaintiffs' medical malpractice claims. However, as per the pending *Motion for Partial Summary Judgment*, the Court is not asked to decide, and does not decide here, the threshold question of whether any negligence occurred that could give rise to liability.

A.  Puerto Rico law

This medical malpractice action is brought under diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). A court sitting in diversity applies the state substantive law and federal procedural law. Suero-Algarín v. CMT Hosp. Hima San Pablo Caguas, 957 F.3d 30, 39 (1st Cir. 2020) (*citing* Gasperini v. Ctr. for Humans., Inc., 518 U.S. 415, 427 (1996); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 80 (1938)). In diversity cases, the Court "look[s] to the pronouncements of a state's highest court in order to discern the contours of that state's law." Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 7 (1st Cir. 2022) (*quoting* González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009)). Thus, "Puerto Rico law supplies the substantive rules of decision."

Civil No. 24-1531 (GMM)
Page -11-

Encompass Health Rehab. Hosp. of San Juan, Inc., 126 F.4th 773, 779 (1st Cir. 2025); Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015) (Puerto Rico is considered a state for diversity purposes). The goal of the Court's inquiry is to ascertain what rule Puerto Rico courts would most likely apply.

Accordingly, when interpreting a statute under Puerto Rico law, the Court "begins with the text of the underlying statute, and ends there as well if the text is unambiguous." In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 274 (1st Cir. 2014); see also P.R. Laws Ann. tit. 31, § 14 (repealed) ("[W]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."). If the text is ambiguous, then the Court must consider "the reason and spirit thereof, or the cause or motives which induced its enactment." Id. § 19 (repealed).[2]

B.   Interpretation of the RAMC Act

---

[2] The current version of the Puerto Rico Civil Code, Act No. 55 of June 1, 2020, codified as P.R. Laws Ann. tit. 31, § 5311, and applicable to the facts of the case, entered into force on November 28, 2020, repealing the previous 1930 Civil Code. See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc., 79 F.4th 1, 5 n.1 (1st Cir. 2023). However, the current version of the Civil Code has yet to be officially translated into English. For this reason, the Court will cite to the annotated Spanish-language compilation, "Leyes de Puerto Rico Anotadas" ("L.P.R.A.") and not the English language compilation, "Puerto Rico Laws Annotated" ("P.R. Laws Ann."). Moreover, and notwithstanding the lack of translation, Articles 19 and 20 of the 2020 Civil Code (31 L.P.R.A §§ 5341-42) contain the same substantive rules of interpretation as Articles 14 and 19 of the 1930 Civil Code, for which reason the Court finds it appropriate to cite and rely on their translated text.

Civil No. 24-1531 (GMM)
Page -12-

In 2006, the Puerto Rico Legislature enacted the RAMC Act, establishing that it "shall be the policy of the Commonwealth of Puerto Rico to acknowledge our responsibility for professional health education, especially for medical education, and for stimulating the development of teaching and of clinical, epidemiological and socio-medical research and health sciences services." P.R. Laws Ann. tit. 24, § 10031 (citation and internal quotation marks omitted). The RAMC Act created its namesake, RAMCs: "A group of one or more hospitals, health facilities, medical groups and health professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services." Id. § 10031(b). In pertinent part, the law defines RAMCs as "the entities in each region established by law in charge of implementing the provisions of this chapter." Id. § 10034(a).

Moreover, among the powers and functions granted to the RAMCs is the power to "[n]egotiate and execute contracts with health institutions that meet the minimum requirements for belonging to a [RAMC] through affiliation agreements. These include hospitals and other medical facilities as for example outpatient clinics, private medical offices, treatment centers and others." Id. § 10034(b)(4). The RAMC Act caps the damages recoverable against RAMCs and their medical students, residents, and faculty members

Civil No. 24-1531 (GMM)
Page -13-

"for the medical procedures practiced in said [RAMCs] in the exercise of their teaching duties." Id. § 10035. Under the statute, damages are limited to "$75,000 for damages suffered by a person and up to $150,000 when the damages were suffered by more than one person or when there are several causes for action to which a single injured party is entitled." Id.

The RAMC Act further affords "governmental immunity . . . to students and physicians enrolled in the internship, residency, and fellowship programs of public and private medical-hospital institutions, so that they are not brought before the courts or any forum of competent jurisdiction." Id. This immunity extends to "all medical residents rendering services in public and private medical-hospital facilities under contract entered into with the Department of Health of Puerto Rico, the University of Puerto Rico, or a Graduate Medical Education Program accredited by the Accreditation Council of Medical Education (ACGME)." Id.[3]

---

[3] Notably, this "immunity provision" was recently included as an amendment to section 7 of the statute by Act No. 94-2023, approved and effective as of August 8, 2023. According to its Statement of Motives, the amendment sought to clarify the legislature's intent to explicitly extend governmental immunity — not merely a liability cap — to students, medical residents, and physicians in post-graduate training in medical malpractice cases. This amendment seems to be a response to Rodríguez Figueroa v. Centro de Salud M, 197 P.R. Dec. 876 (2017), where the Puerto Rico Supreme Court held that the previous version of section 7 did not afford immunity to medical students, but rather a liability cap: "[A]t the RAMCs, students, and faculty members, in cases involving medico-hospital malpractice, do not have 'immunity,' but rather a monetary cap on the amounts that may be ordered to compensate." The liability cap, however, still applies to the RAMC and its medical faculty. See Seda-Rodríguez v. Centro Médico Episcopal San Lucas Ponce, Inc., No. 23-CV-1207-ADC, 2025 WL 918730, at *6 (D.P.R. Mar. 26, 2025).

Civil No. 24-1531 (GMM)
Page -14-

This District does not approach the RAMC Act and its liability caps for the first time. *See generally* Seda-Rodríguez v. Centro Médico Episcopal San Lucas Ponce, Inc., No. 23-CV-1207-ADC, 2025 WL 918730 (D.P.R. Mar. 26, 2025); Ortiz-Santiago v. Hosp. Episcopal San Lucas, Inc., No. 16-CV-1099-ADC, 2018 WL 4007086 (D.P.R. Aug. 20, 2018).

As result of previous cases, the Court certified two questions to the Supreme Court of Puerto Rico which involved the application of the RAMC Act liability caps. Accordingly, in Ortiz Santiago v. Hospital Episcopal San Lucas, Inc., 205 P.R. Dec. 222 (P.R. 2020), the Supreme Court of Puerto Rico held that the RAMC Act's liability caps apply globally to all claims brought against covered institutions and medical professionals. Id. at 236-37.

Most recently, the First Circuit issued a relevant opinion in Pérez-Pérez v. Hospital San Lucas, Inc., 113 F.4th 1 (1st Cir. 2024), holding that whether a doctor was a member of the hospital's faculty at the relevant time was a factual dispute that, if not uncontroverted, should be for the jury to decide. Id. at 6. There, the First Circuit highlighted its analysis in Torres Vargas v. Santiago Cummings, 149 F.3d 29 (1st Cir. 1998), where it ruled that the contract presented questions of fact that precluded summary judgment as to the immunity provided by law. Id. at 33.

Civil No. 24-1531 (GMM)
Page -15-

Notably, and as relevant here as to the RAMC Act, the First Circuit stated:

> A similar conclusion fits here, even more snugly. In theory, whether one is a faculty member performing a teaching duty within the meaning of [the RAMC Act] is a mixed question of fact and law. Factually, what is the agreed-upon relationship with the hospital, and what was the person doing on the relevant occasion? Legally, is that relationship that of a "faculty member" within the meaning of the statute, and is certain conduct "teaching"?

Pérez-Pérez, 113 F.4th at 7. The First Circuit continued:

> Of course, if the evidence on a factual issue is so one-sided that there is no room for reasonable dispute, a court can decide the issue, for example by granting summary judgment. But "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Id.

Given the foregoing, recent judicial interpretations of the RAMC Act establish that a defendant seeking to invoke the statute's liability caps at summary judgment must show that no genuine issue of material fact exists as to whether the alleged damages occurred in the exercise of teaching duties.

That is the issue this Court must address now.

C.    Whether Dr. Vargas has established that she attended to Ms. Pérez in the exercise of her teaching duties

Civil No. 24-1531 (GMM)
Page -16-


Here, according to the undisputed facts, there is no question that at all relevant times, (1) Hospital Damas was a RAMC or part of the Southwestern RAMC; (2) Dr. Vargas was a faculty member of the Ponce School of Medicine and Health Sciences, which has an *Affiliation Agreement* with Hospital Damas to provide educational experiences and teaching sites for medical residents; and (3) Dr. Vargas was the physician who treated Ms. Pérez at Hospital Damas. *See generally* (Docket Nos. 101-1; 101-3; 101-4; 114-1).

However, as previously discussed, for the RAMC Act's liability caps to apply to Dr. Vargas, she must establish that Ms. Pérez's treatment at Hospital Damas was performed in the exercise of academic and teaching duties, as opposed to a procedure undertaken in another capacity. Her *Motion for Partial Summary Judgment* turns precisely on this question.

This matter is contested. Particularly, Dr. Vargas argues that the interventions with Ms. Pérez at Hospital Damas were performed assisted by several transitional interns and residents in their rotation of Internal Medicine. (Docket No. 101 at 11-12). These interventions took place while Dr. Vargas was functioning as an attending physician in her role as Assistant Professor certified by Southwestern RAMC and the Ponce School of Medicine and Health Sciences. Moreover, she alleges that during the course of the treatment of Ms. Pérez at Hospital Damas, Dr. Vargas was assisted

Civil No. 24-1531 (GMM)
Page -17-

by several transitional residents or residents. (Id.). To establish this, she provides her own testimony at deposition and via an affidavit. (Docket Nos. 101-6; 117). Notably, however, Dr. Vargas admitted under oath that she does not always evaluate patients in the presence of residents. *See* (Docket No. 110-2 at 13-14). As to the admission of Ms. Pérez on June 15, 2022, Dr. Vargas also admitted that her documentation of the admission does not indicate that residents were present, but that she later discussed the case with the residents in the rotation. (Docket Nos. 110-2 at 18-19; 114-1 at 3).

While it is undisputed that no residents were present during Dr. Vargas's initial evaluation of Ms. Pérez on June 15, 2022, that fact alone neither establishes nor forecloses the application of the RAMC Act. The material dispute concerns what occurred thereafter: whether residents participated in Ms. Pérez's care, the nature and extent of that participation, the degree to which their work was integrated into her treatment, and whether those activities amounted to the exercise of teaching duties under the statute. Those questions are factual and cannot be resolved on the present record.

In addition, the medical record submitted to the Court does not reflect that any resident made an annotation as to Ms. Pérez's treatment on that date. Only on June 16, 2022, does the medical

Civil No. 24-1531 (GMM)
Page -18-

record show an annotation signed by "N. Santiago," which Dr. Vargas identifies as a resident. *See* (Docket Nos. 101-11 at 2; 114-1 at 4). There is no further evidence on record that any resident participated in or documented care for Ms. Pérez on the relevant dates.

Not only is this contested, but the underlying facts as to this matter are too underdeveloped to withstand this Court's review. Dr. Vargas provided no specific information as to what her teaching or supervision of the residents entailed in this case, or how the undisputed facts demonstrate that Ms. Pérez was being treated as part of Hospital Damas and Dr. Vargas's academic and teaching duties. Here, Dr. Vargas has failed to support that she undertook Ms. Pérez's treatment as part of her "teaching duties" with evidence that approaches the level of specificity that has been required in similar cases in this District. *See* Seda-Rodríguez, 2025 WL 918730, at *10. Dr. Vargas relies solely on her faculty status and her involvement in Ms. Pérez's treatment at Hospital Damas as a RAMC.

Moreover, the present record does not establish, as a matter of law, that the subsequent involvement of residents was sufficiently integrated into Ms. Pérez's treatment to render the care at issue an exercise of Dr. Vargas's teaching duties within the meaning of the RAMC Act. Whether that later involvement

Civil No. 24-1531 (GMM)
Page -19-

constituted supervision incidental to patient care or patient care rendered in the exercise of teaching duties remains a disputed factual issue.

In a nutshell, Dr. Vargas requests the Court to conclude, as a matter of law, that because residents became involved at some point during Ms. Pérez's hospitalization, the treatment necessarily constituted an exercise of teaching duties under the RAMC Act. The present record does not compel that conclusion. Thus, the Court finds that these facts, without more, are not enough to establish that the RAMC Act's liability caps apply to Dr. Vargas's actions in this case because, as the First Circuit has established, "an absence of evidence on a critical issue weighs against the party — be it the movant or the nonmovant — who would bear the burden of proof on that issue at trial." Pérez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001).

Critically, following the First Circuit's Pérez-Pérez decision, the Court cannot adjudicate the matter in favor of one side or the other on the record before it. Whether the medical care rendered to Ms. Pérez was provided in the exercise of Dr. Vargas's teaching duties, as that phrase is used in the RAMC Act, depends upon disputed facts concerning the role actually played by residents during the course of her treatment. Because those facts remain genuinely disputed, the Court cannot resolve the

Civil No. 24-1531 (GMM)
Page -20-

applicability of the statute's liability limitations as a matter

of law.

## V.   CONCLUSION

For the reasons explained above, Dr. Vargas's *Motion for
Partial Summary Judgment* is **DENIED.**


**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this June 30, 2026.


/s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE